IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-04-00298-CV

 

Mohamad Elchehimi, Individually

and as Parent and Next Friend of 

K.E. and L.E., Minor Children,

                                                                      Appellant

 v.

 

Nationwide Insurance Company,

                                                                      Appellee

 

 



From the County Court at Law

Ellis County, Texas

Trial Court No. 03-C-3352

 



DISSENTING  Opinion










 

          Is an “alligator” a vehicle?  Until
today, no.  But no longer am I confident of that answer.  There was no question
that the tread of a truck tire which has separated from the tire casing,
commonly referred to as an “alligator,” when appearing on our nation’s highways
by the thousands, was not a “vehicle” as defined for uninsured motorist
coverage.  There is no question that the tread on a tire is an important
component part of the vehicle.  So over the next 20 years we will be litigating
the issue of what is a large enough component part or an important enough
component part of a vehicle to be a “vehicle” within the definition for
uninsured motorist coverage.  

Host of Questions

          Is a metal leaf spring that has broken
and fallen out on the highway a component part?  It is not the whole spring, or
even a whole leaf from a spring, it is just the nasty part that is about 18
inches long with a 90° bend and
a lip of about an inch at the end which gives it just enough of a curl that
when run over by the vehicle that lost it, or another vehicle, can become
airborne and lethal.  Is a muffler a vehicle?  Is a single tire a vehicle?  Is
a single bolt or screw a vehicle when it “collides” with the tire of another
vehicle causing a blowout and rollover?  The fact patterns of what can be
attached as a component to a vehicle that may become separated and collide with
another vehicle causing damage are endless. I recently saw a photograph of a
car with a regular 110 volt home-type window unit air conditioner installed in
the right rear window.  No, it did not need a long extension cord.  It was
plugged into the portable generator that had been mounted on the top of the
trunk lid.  When these items become detached, are they a vehicle for purposes
of uninsured motorist coverage?

Law versus Result

          So what we do here today, in the
majority opinion, is decide whether the law’s consistent application, harsh
though it may seem, is going to yield to a warm, comfortable result.  I choose
to follow the consistent application of the law and would follow the San Antonio Court when they held that a loading ramp that came loose from a trailer was not
a “vehicle” for purposes of uninsured motorist coverage.  And it is not because
it was part of the trailer because under the definition, the term “vehicle”
includes a trailer.  The reason the San Antonio Court held it did not meet the
definition of “vehicle” was very simple and logical.

This case is unlike other reported cases because
the summary judgment record shows the ramp was not cargo; rather, it was a
component of the trailer that detached from the trailer immediately before
colliding with Smith’s vehicle.  Smith contends, essentially, that the ramp was
not on the road long enough to become debris; or at the very least, a fact
question exists about whether the ramp was debris.  We need not determine
whether the ramp was debris—whatever it was, it was not a trailer or a motor
vehicle, and Smith’s policy provides UM coverage only if a “land motor vehicle
or trailer” is involved.  (footnotes omitted)

 

Smith v. Nationwide Mut. Ins. Co., No. 04-02-00646-CV, 2003 Tex. App. LEXIS 5056,
*6-7 (Tex. App.—San Antonio June 18, 2003, pet. denied).

          We should dispose of this case with
the same simplicity and logic.  By the very argument that the wheels and axle
were an integral, component part of a vehicle, the conclusion that it is
not a vehicle should be obvious.

Problems in the
Majority’s Analysis

          For the majority’s theory to work,
they know they must connect it in time, thus they add a requirement that the
actual physical contact must occur in an unbroken chain of events.  This may
limit some “alligators” from wandering into the courtroom.  But when a truck
loses a tire tread—a cap—, how can you distinguish the movement from the
initial vehicle from one that ran over it and hurled it into the path of a motorist? 
Or if you are in the area of Lipsitz’s recycling facility, how can you know the
wheel assembly came from the running gear of an operating truck, rather than
from the load of scrap metal the truck is hauling?

          Another problem for the majority’s
theory is that they have determined it must be an “integral” component part. 
Defining “integral” component parts is also going to be a rich source of litigation
over the next 20 years.  I would have thought integral meant something like it
was defined in the dictionary—“Essential or necessary for completeness.” The
 American Heritage College Dictionary, 706 (3rd Edition, Houghton Mifflin
Company 1997).  I cannot determine if “integral” will be a limitation on what
constitutes a component part or may be an expansion of the scope of component
parts leading to liability.  If the part is so essential that it is necessary
for the operation of the vehicle, then the vehicle would stop and the uninsured
motorist could then be identified.  But in this instance, the part which
separated though large and seemingly important—a drive axel and tandem wheels
and tires—did not render the vehicle from whence it came inoperable.  Of
course, I am assuming it did not come from a load of scrap metal.

          Finally, contrary to the extensive
discussion of “contact” in the majority opinion, in which a highly suspect
survey of state law is conducted, the issue is not limited to contact or actual
contact; it is about the definition of vehicle.  That is what the San Antonio Court focused upon and that is the issue we should focus upon.  There is no
question the wheel assembly made physical contact with the insured’s vehicle. 
The real question is, does the wheel assembly come within the definition of
vehicle.

Conclusion

          I would rewrite neither the insurance
contract nor the insurance code.  The axel and tandem wheel set are not a
vehicle. I would affirm the trial court’s judgment.  Because the majority does
not, I dissent.

 

                                                          TOM
GRAY

                                                          Chief
Justice

 

Dissenting
opinion delivered and filed December 28, 2005